Nos. 23-1006, -1008

IN THE

# United States Court of Appeals for the Federal Circuit

SOFTVIEW LLC,

*Appellant,*

*v.*

APPLE INC., MOTOROLA MOBILITY LLC,

*Appellees.*

On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board Appeal Nos. 2022-000716 & 2022-000154

## RESPONSE BRIEF OF
## APPELLEES APPLE INC. AND MOTOROLA MOBILITY LLC

Madeleine C. Laupheimer
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Sonal N. Mehta
WILMER CUTLER PICKERING HALE
   AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306

*Counsel for Appellee
Motorola Mobility LLC*

Parth Sagdeo
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
(617) 880-1800

Melanie L. Bostwick
Mark S. Davies
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005

*Counsel for Appellee
Apple Inc.*

*Additional Counsel Listed on Inside Cover*

John C. Alemanni
KILPATRICK TOWNSEND &
    STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC  27609

David A. Reed
KILPATRICK TOWNSEND &
    STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800,
Atlanta, GA  30309

*Counsel for Appellee*
*Motorola Mobility LLC*

Henry A. Petri, Jr.
POLSINELLI PC
1401 Eye Street, NW, Suite 800
Washington, DC  20005

James P. Murphy
POLSINELLI PC
1000 Louisiana Street, Suite 6400
Houston, TX  77002

*Counsel for Appellee*
*Apple Inc.*

# CLAIMS AT ISSUE

## U.S. Patent No. 7,831,926

**Claim 1 (Cancelled).** A mobile device, comprising:

a processor,

a wireless communications device operatively coupled to the processor, to facilitate communication with a network via which Web content may be accessed;

a touch-sensitive display;

a memory, operatively coupled to the processor; and

storage means, operatively coupled to the processor, in which a plurality of instructions are stored that when executed by the processor enable the mobile phone to perform operations including,

enabling a user to request access to a Web page comprising HTML-based Web content defining an original page layout, functionality, and design of content on the Web page;

retrieving HTML-based Web content associated with the Web page;

translating the HTML-based Web content to produce scalable vector-based page layout information;

employing the scalable vector-based page layout information and/or data derived therefrom to,

render a view of at least a portion of the Web page on the touch-sensitive display using a first scale factor; and

re-render the Web page in response to associated user inputs to enable a user to iteratively zoom in and out views of the Web page on the display while preserving the original page layout, functionality, and design of the content on the Web page defined by the HTML-based Web content,

wherein preservation of the functionality defined by the HTML-based content includes preservation of hyperlink functionality.

**Claim 29 (At issue).** The mobile device of claim **1**, wherein the HTML-based Web content includes cascading style sheet content defining layout and presentation attributes for the Web page.

**Claim 52 (Cancelled).** A mobile device, comprising:

a processor,

wireless communications means, to facilitate wireless communication with a network via which Web content may be accessed;

a touch-sensitive display;

flash memory, operatively coupled to the processor, in which a plurality of instructions are stored that when executed by the processor enable the mobile device to perform operations including,

rendering a browser interface via which a user is enabled to request access to a Web page comprising HTML-based Web content defining an original page layout, functionality, and design of content on the Web page;

retrieving and processing the HTML-based We.b content to produce scalable content; and

employing the scalable content and/or data derived therefrom to,

render a view of the Web page on the touch-sensitive display; and

re-render the Web page in response to associated user inputs to enable the user to iteratively zoom in and out views of the Web page while preserving an original page layout, functionality, and design defined by the HTML-based Web content as interpreted by a rendering engine,

wherein preservation of the functionality defined by the HTML-based Web content includes preservation of hyperlink functionality.

**Claim 64 (At issue).** The mobile device of claim **52**, wherein execution of the instructions performs further operations comprising enabling a user to view a column of the Web content at a higher resolution than a current resolution by tapping on the column via the touch-sensitive

display, wherein in response thereto, the display is re-rendered such that content corresponding to the selected column is displayed across the touch-sensitive display.

**Claim 66 (At issue).** The mobile device of claim **52**, wherein execution of the instructions performs further operations comprising enabling a user to view a paragraph of the Web content at a higher resolution than a current resolution by tapping on the paragraph via the touch-sensitive display, wherein in response thereto, the display is re-rendered such that content corresponding to the selected paragraph is displayed across at least one of a width and height of a display area of the touch-sensitive display.

**Claim 78 (At issue).** The mobile device of claim **52**, wherein a portion of the HTML-based Web content comprises cascading style sheet data.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-1006 |
| **Short Case Caption** | SoftView LLC v. Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/17/2023     Signature: /s/ Parth Sagdeo

Name: Parth Sagdeo

iv

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable ☐   Additional pages attached

| Novak Druce + Quigg LLP | Donald J. Quigg | Tracy W. Druce |
|---|---|---|
| Novak Druce Connolly Bove + Quigg LLP | James P. Murphy | Marylauren N. Ilagen |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below) ☐   No ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 23-1006

**Short Case Caption** SoftView LLC v. Apple Inc.

**Filing Party/Entity** Motorola Mobility LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/17/2023

Signature: /s/ Madeleine Laupheimer

Name: Madeleine Laupheimer

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Motorola Mobility LLC | Google LLC | Lenovo Group Limited |
| | | Motorola Mobility Global Holdings Limited |
| | | Motorola Mobility Holding LLC |
| | | Alphabet Inc. |
| | | XXVI Holdings Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Michael S. Pavento | Kilpatrick Townsend & Stockton LLP | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CLAIMS AT ISSUE.....................................................................................i

CERTIFICATE OF INTEREST .............................................................iv

TABLE OF CONTENTS ...........................................................................x

TABLE OF AUTHORITIES...................................................................xiv

STATEMENT OF RELATED CASES ................................................xvii

INTRODUCTION.....................................................................................1

STATEMENT OF THE ISSUES..............................................................3

STATEMENT OF THE CASE ..................................................................5

    Between 1995 and 1997, Pad++, a Web browser with panning, scaling, and zoom and functionality, is developed and disclosed....5

    By 2000, HTML and CSS were standardized and implemented by commonly used Web browsers. .......................................................7

    In June 2000, the earliest parent application to the '926 patent is filed. The '926 patent claims as its invention a zoomable Web browser. ........................................................................................8

    An inter partes review on the '926 patent concludes. Claims 30, 31, 40, 41, 43, 52, 55, 59, 72, and 75 are invalidated. ...................10

    An ex parte reexamination on the '926 patent concludes. Claims 1-28, 32-39, 43, and 44-51 are invalidated. ...................................10

    Apple and Motorola filed requests for inter partes reexamination. ...................................................................................................11

    The Board holds claims 29, 64, 66, and 78 to be unpatentable as obvious. ........................................................................................12

SUMMARY OF THE ARGUMENT ........................................................ 13

STANDARD OF REVIEW .................................................................... 18

ARGUMENT ........................................................................................ 19

I.    SoftView Has Not Demonstrated Error in the Board's New
      Ground 1 ................................................................................ 19

      A.    Substantial evidence supports the Board's claim-
            element analysis ......................................................... 20

            1.    SoftView's argument is improper. ...................... 20

            2.    The Board's finding that all limitations are
                  taught is supported by substantial evidence ...... 21

      B.    Substantial evidence supports the Board's reasonable-
            expectation-of-success finding. .................................... 23

      C.    SoftView's conclusory challenge to the Board's
            motivation-to-combine finding should be rejected. ...... 28

      D.    SoftView's teaching away argument lacks merit. ........ 29

II.   SoftView Has Not Demonstrated Error in the Board's New
      Ground 2 ................................................................................ 32

      A.    Substantial evidence supports the Board's finding that
            the cited art teaches "cascading style sheet content" as
            recited in claims 29 and 78. ........................................ 33

      B.    Substantial evidence supports the Board's finding that
            the cited art teaches that the CSS content "define[s]
            layout … attributes" .................................................... 36

      C.    Substantial evidence supports the Board's reasonable-
            expectation-of-success finding. .................................... 37

1.     Substantial evidence supports the Board's conclusion that a person of ordinary skill in the art would have a reasonable expectation of success in combining the teachings of New Ground 2 ............................................................. 38

2.     SoftView's arguments against a reasonable expectation of success lack merit ........................ 39

III.   SoftView Has Not Demonstrated Error In The Board's Rejection Of Claims 64 And 66. ........................................... 43

A.     SoftView has not shown error regarding the "rendering engine" limitation ........................................................ 43

1.     SoftView's "rendering engine" argument is improper. ........................................................ 44

2.     SoftView's "rendering engine" argument is wrong on the merits. ..................................................... 46

B.     SoftView has not shown error regarding the "tapping" limitations. .................................................................. 48

IV.    SoftView's Procedural Arguments Lack Merit. .................... 52

A.     SoftView has not shown error in the Board's use of admitted prior art. ..................................................... 52

1.     SoftView does not dispute the propriety of the reexamination proceedings before the Board's decision. ............................................................. 53

2.     The Board's use of AAPA was proper. ................ 55

3.     Even accepting SoftView's incorrect legal argument as true, the Board's use of AAPA was proper. .............................................................. 59

B.    SoftView has not shown error in the Board's decision to adopt new grounds of rejection. ...................................61

    1.    The Procedural History At Issue ........................61

    2.    SoftView's procedural objection to the new grounds of rejection lacks merit. ........................63

        a.    SoftView has not shown any error with respect to the Board's New Ground 1. ........65

        b.    SoftView has not shown any error with respect to the Board's New Ground 2. ........66

C.    SoftView Has Not Demonstrated a Violation of the APA. ................................................................................67

V.    Rule 42.73 Estoppel Provides This Court with an Alternative Ground Of Affirmance ............................................................70

    A.    Claims 29 and 78 are not patentably distinct from already-cancelled claim 66 of the '353 patent. ............71

    B.    Claims 64 and 66 are not patentably distinct from already-cancelled claims 12 and 14. ...........................72

CONCLUSION .......................................................................74

CERTIFICATE OF COMPLIANCE .......................................................75

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC,*
  825 F.3d 1373 (Fed. Cir. 2016) ........................................................... 31

*Cephalon, Inc. v. Watson Pharms., Inc.,*
  707 F.3d 1330 (Fed. Cir. 2013) ........................................................... 28

*In re Comiskey,*
  554 F.3d 967 (Fed. Cir. 2009) ............................................................. 70

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966) .............................................................................. 19

*Gen. Foods Corp. v. Studiengesellschaft Kohle mbH,*
  972 F.2d 1272 (Fed. Cir. 1992) ........................................................... 73

*In re Google Tech. Holdings LLC,*
  980 F.3d 858 (Fed. Cir. 2020) ............................................. 21, 30, 45

*In re GPAC Inc.,*
  57 F.3d 1573 (Fed. Cir. 1995) ...................................................... 27, 42

*HTC Corp. v. Cellular Commc'ns Equip., LLC,*
  877 F.3d 1361 (Fed. Cir. 2017) ........................................................... 18

*In re Jolley,*
  308 F.3d 1317 (Fed. Cir. 2002) ........................................................... 19

*In re Keller,*
  642 F.2d 413 (C.C.P.A. 1981) .............................................................. 29

*KSR Int'l Co. v. Teleflex Inc.,*
  550 U.S. 398 (2007) .............................................................................. 51

*In re Lonardo,*
  119 F.3d 960 (Fed. Cir. 1997) ............................................................. 54

*McCoy v. Heal Sys., LLC,*
    850 F. App'x 785 (Fed. Cir. 2021) ...................................................... 61

*Orthopedic Equip. Co. v. United States,*
    702 F.2d 1005 (Fed. Cir. 1983) ...................................................... 24

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ...................................................... 35

*PPG Indus., Inc. v. Guardian Indus. Corp.,*
    75 F.3d 1558 (Fed. Cir. 1996) ...................................................... 41

*Qualcomm Inc. v. Apple Inc.,*
    24 F.4th 1367 (Fed. Cir. 2022) .............................................. 57, 60

*SAS Inst., Inc. v. Iancu,*
    138 S. Ct. 1348 (2018) .......................................................... 59, 66

*Trs. of Columbia Univ. v. Illumina, Inc.,*
    620 F. App'x 916 (Fed. Cir. 2015) ...................................................... 25

*VirnetX Inc. v. Apple, Inc.,*
    909 F.3d 1375 (Fed. Cir. 2018) ...................................................... 46

*White Consol. Indus., Inc. v. Vega Servo-Control, Inc.,*
    713 F.2d 788 (Fed. Cir. 1983) .............................................. 40, 41

## Statutes

35 U.S.C. § 132 (2011) ...................................................... 56

35 U.S.C. § 133 (2011) ...................................................... 56

35 U.S.C. § 134 (2011) ...................................................... 56

35 U.S.C. § 301 (2011) .............................................. 53, 57, 58

35 U.S.C. § 301(a)(1) (2011) ...................................................... 53

35 U.S.C. § 303 (2011) .............................................. 54, 55

35 U.S.C. § 311 (2011) ..................................2, 17, 53, 54, 55, 57, 58

35 U.S.C. § 314 (2011) ................................................................ 55, 59

35 U.S.C. § 315 (2011) ...................................................................... 56

## Rules and Regulations

37 C.F.R. § 1.104 ........................................................................ 56, 57

37 C.F.R. § 1.104(c)(3) ....................................................................... 56

37 C.F.R. §§ 1.104-1.116 .................................................................... 56

37 C.F.R. § 1.530(j) ............................................................................ 43

37 C.F.R. § 1.530(k) ............................................................................ 43

37 C.F.R. § 1.937 ................................................................................ 56

37 C.F.R. § 1.959 ................................................................................ 56

37 C.F.R. § 41.77 .............................................. 56, 59, 64, 65, 66

37 C.F.R. § 41.77(b) ........................................................................... 64

37 C.F.R. § 41.79(b)(1) ....................................................................... 45

37 C.F.R. § 41.79(b)(3) ....................................................................... 45

37 C.F.R. § 42.73 ............................................................ 5, 18, 70, 71

37 C.F.R. § 42.73(d)(3) ....................................................................... 70

## Other Authorities

Final Written Decision, *Apple Inc. v. Qualcomm Inc.*, No.
    IPR2018-01315, Paper 40 (PTAB Nov. 10, 2022) .............................. 61

Memorandum from Katherine K. Vidal, Under Secretary of
    Commerce for Intellectual Property and Director of the
    United States Patent and Trademark Office, to Members
    of the Patent Trial and Appeal Board (June 9, 2022),
    https://www.uspto.gov/sites/default/files/documents/20220
    609updatedAAPAmemo.pdf .............................................................. 61

## STATEMENT OF RELATED CASES

No appeal in or from the same proceeding was previously before this or any other appellate court. *SoftView LLC v. Apple Inc. & Motorola Mobility LLC*, Case Nos. 2023-1005, 2023-1007 (Fed. Cir.), currently pending in this Court, involves U.S. Patent No. 7,461,353 ("the '353 patent"), which is related to and shares a specification with the patent at issue in this case, 7,831,926 ("the '926 patent"). *SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC*, 2014-1599 (Fed. Cir. Feb. 9, 2015), affirmed the Patent Trial and Appeal Board's ("Board") holding in an *inter partes* review that certain claims of the '926 patent were unpatentable. *In re SoftView LLC*, 2020-1971 (Fed. Cir. May 14, 2021), affirmed the Board's holding in an *ex parte* reexamination that certain claims of the '926 patent were unpatentable. *SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC*, 2014-1600 (Fed. Cir. Feb. 9, 2015), affirmed the Board holding in an *inter partes* review that certain claims of the '353 patent were unpatentable.

# INTRODUCTION

This case is the third time that the '926 patent has come before this Court. The first time, this Court affirmed the Board's decision holding claims 30, 31, 40, 41, 43, 52, 55, 59, 72, and 75 to be unpatentable. The second time, this Court affirmed the Board's decision holding claims 1-28, 32-39, 42, and 44-51 to be unpatentable. Now, SoftView appeals from the Board's decisions in *inter partes* reexaminations holding claims 29, 64, 66, and 78 to be unpatentable. Each of the claims at issue depends on a claim that this Court has already held to be unpatentable and recites only minor additional limitations. This Court should again affirm the Board and hold the claims at issue unpatentable.

On the merits, SoftView does no more than restate factual assertions considered—and rejected—by the Patent Office. Independent claims 1 and 52, each of which claims a mobile device with a Web browser that uses a vector-based representation to scale and zoom webpages, have already been held unpatentable by this Court. Claims 29 and 78, in essence, add to these already-invalidated claims that the browser has support for cascading style sheets ("CSS"). But

substantial evidence supports the Board's findings that CSS was part of the HTML standard, implemented by then-conventional browsers such as Mozilla and Internet Explorer, and could have been combined with the teachings of a prior-art zoomable browser known as Pad++ to arrive at the claims.  Claims 64 and 66 add to already-invalidated independent claim 52, in essence, that tapping a column or paragraph of text causes the browser to zoom into that column or paragraph such that it is shown across the width or height of the display.  But substantial evidence supports the Board's conclusion that this, too, was obvious in view of Pad++.

What's left in SoftView's appeal is a hodgepodge of procedural objections.  None have any merit.  First, SoftView contends that the Board erred by using applicant-admitted prior art.  But the statutory section on which SoftView relies, pre-AIA 35 U.S.C. § 311, pertains not to what the Board can do but instead to the content of third-party *requests* for *inter partes* reexamination.  Second, SoftView asserts that the Board's use of new grounds of rejection is improper.  But SoftView's argument is premised on misinterpretations of both of the Board's decision and of the relevant regulation.  Third, SoftView alleges that

the Board's decision is inconsistent with a prior *ex parte* reexamination decision. But that is wrong at least because of the different grounds of rejection and different record here.

Although not strictly necessary, this Court may affirm the Board on an alternative ground, namely, that SoftView is precluded by regulation from contesting the patentability of the claims at issue in this case. That is because none of the claims at issue are patentably distinct from claims that have already been found unpatentable by the Board. SoftView is not permitted to relitigate claims that are at best obvious variations of claims that the Patent Office has fulsomely considered—and cancelled.

This Court should affirm the Board's decision holding claims 29, 64, 66, and 78 unpatentable.

## STATEMENT OF THE ISSUES

1.    Applicant-admitted prior art ("AAPA") discloses that conventional Web browsers can be used to parse content (such as CSS) and generate layout and presentation information. Claims 29 and 78 are dependent claims that only add CSS support to a claimed browser already found unpatentable by this Court. Does substantial evidence

3

support the Board's finding that New Ground 1 (which includes the admitted prior art) renders claims 29 and 78 obvious?

2.    The HTML 4.0 Specification describes the use of CSS to specify layout and presentation information.  Does substantial evidence support the Board's finding that New Ground 2 (which includes the HTML 4.0 Specification) renders claims 29 and 78 obvious?

3.    Pad++ teaches clicking on a column or paragraph of text to zoom into it.  Claims 64 and 66 are dependent claims that only add tap-to-zoom limitations to claims already found unpatentable by this Court.  Does substantial evidence support the Board's rejection of claims 64 and 66 as obvious?

4.    The Board entered a new ground of rejection holding claims 29 and 78 unpatentable in view of AAPA in combination with several prior art references. The Board used the AAPA only to show that single limitation was known in the art.  Has SoftView shown legal error in the Board's use of AAPA?

5.    The Board issued one new ground of rejection based on its authority to reverse an examiner's determination and another new ground of rejection based on its authority to enter grounds not raised to

it on appeal.  Has SoftView shown legal error in the Board's issuance of new grounds of rejection?

6.    In a prior *ex parte* proceeding, the Board concluded that the record did not support the examiner's finding of obviousness for claim 29.  In the proceeding at issue here, which involved different prior art combinations and a different record, the Board concluded that claim 29 was obvious.  Has SoftView demonstrated that the different result as to the patentability of claim 29 violated the Administrative Procedure Act?

7.    Claims 29 and 78 are materially the same as already-cancelled claim 66 of the related '353 patent.  Claims 64 and 66 are materially the same as already-cancelled claims 12 and 14 of the '926 patent.  Should this Court affirm the Board on the alternative ground that 37 C.F.R. § 42.73 precludes SoftView from disputing the unpatentability of claims 29, 64, 66, and 78?

## STATEMENT OF THE CASE

***Between 1995 and 1997, Pad++, a Web browser with panning, scaling, and zoom and functionality, is developed and disclosed.***

Between 1995 and 1997, Dr. Benjamin Bederson and others developed software and published articles for a project known as

5

Pad++.[1]  Pad++ is, as Dr. Bederson put it, "a zoomable graphical interface system."  Appx403.  "Pad++ workspaces [are] large high resolution areas, allowing the viewing of complex collections of information at multiple scales.  Zooming and panning are the primary methods of navigating in Pad++."  Appx403.  Pad++ includes, among other things, a Web browser that supports panning and zooming. Appx686.  For example, Pad++ discloses that "[w]hen you click on a piece of text, Pad++ zooms in so that that text fills the screen horizontally and appears near the top of the screen vertically." Appx654.  Although the Pad++ software was itself developed for traditional computers, articles describing Pad++ note that personal digital assistant ("PDA") support was planned and that Pad++'s feature set "seems especially attractive for systems which have small screens, such as handheld computers (i.e., PDA's)."  Appx741.

---

[1] Pad++ is described in a collection of six references: Bederson-1 (Appx402-404), Bederson-2 (Appx405-417), Bederson-3 (Appx418-430), Bederson-4 (Appx431-466), Bederson-5 (Appx467-496), and Pad++ Tour (Appx600-742).

**_By 2000, HTML and CSS were standardized and implemented by commonly used Web browsers._**

"To publish information for global distribution, one needs a universally understood language, a kind of publishing mother tongue that all computers may potentially understand. The publishing language used by the World Wide Web is HTML (from HyperText Markup Language)." Appx2540.

HTML 4.0, which was released in 1997, provides a distinction between document "structure" and document "presentation." Appx2541. A document's structure includes its substance and meaning (e.g., text, tables, and images). Appx2534. A document's presentation refers to the way the document looks (e.g., the fonts and colors used). Appx2534. In HTML 4.0, a document's structure is coded using HTML "elements" (sometimes colloquially called "tags"), Appx2549, and a document's presentation is preferably coded using "style sheets," Appx2692. A "cascading style sheet" ("CSS") is a type of style sheet that "allow[s] style information from several sources to be blended together." Appx2693. The HTML 4.0 Specification does not limit itself to any particular style sheet language but refers to and includes examples

from two style sheet standards: CSS 1 and CSS 2.  Appx2693,

Appx2844, Appx2846.

A Web browser is a software program that interprets the HTML

and CSS of a Web page and displays it to the user.  Appx2554.

Internally, Web browsers use a "rendering engine" to process HTML

and CSS, generate a corresponding "layout" of the Web page, and then

"paint" the content to the browser's display window.  Appx1764.

By 2000, Web browsers had implemented HTML and CSS.  These

browsers included Mozilla (spun out from Netscape) and Microsoft's

Internet Explorer.  Appx1764-1765.

### *In June 2000, the earliest parent application to the '926 patent is filed. The '926 patent claims as its invention a zoomable Web browser.*

The patent at issue in this case is U.S. Patent No. 7,831,926

("the '926 patent").  The '926 patent is titled "Scalable Display of

Internet Content on Mobile Devices," and claims priority to a

provisional application filed on June 12, 2000.  Like Pad++, the '926

patent discloses a zoomable Web browser.  Appx109 (abstract).

The '926 patent describes enabling its zooming feature by converting

HTML into a "scalable vector representation," which can then be

panned and zoomed. Appx134(4:56-65). As relevant to the present

appeal, the '926 patent discloses piggybacking on then-existing Web

browsers to implement certain features. For example, the '926 patent

notes that "the functions performed in blocks 150, 152, and 154" of

Figure 5, which relate to parsing HTML content, separating content

into objects, defining bounding boxes, and defining page layout based on

the bounding boxes, "are commonly performed by conventional browsers

during a pre-rendering process." Appx141(17:31-36). In particular,

the '926 patent contemplates the use of the Mozilla rendering engine to

implement this functionality:

> In some browsers, these functions are performed by the
> Mozilla rendering engine, which comprises open-source
> software that is readily available for use by developers. At
> present, the software for the Mozilla rendering engine may
> be accessed via the Internet at www.mozilla.org.
> Accordingly, in one embodiment, the present invention uses
> core functionality provided by the Mozilla rendering engine
> source code to perform the functions of block 150, 152, and
> 154.

Appx141(17:31-41).

The '926 patent issued on November 9, 2010. Two of the four

claims at issue in this case, claims 29 and 78, essentially claim as novel

that the claimed browser supports CSS content (the "CSS limitations").

Appx145 (25:65-67); Appx148 (31:54-56). The other two claims at issue, claims 64 and 66, essentially claim as novel that the claimed browser supports tapping to zoom into a column or paragraph (the "tapping" limitations). Appx147(30:17-24, 30:33-41).

### *An inter partes review on the '926 patent concludes. Claims 30, 31, 40, 41, 43, 52, 55, 59, 72, and 75 are invalidated.*

On March 29, 2013, after requests by Kyocera Corporation and Motorola Mobility LLC, the Patent Trial and Appeal Board ("Board") instituted an *inter partes* review ("IPR") on claims 30, 31, 40, 41, 43, 52, 55, 59, 72, and 75 of the '926 patent. Appx200. The claims were challenged as obvious over a number of references including the Pad++ references. Appx200-201. The review resulted in a Final Written Decision holding all challenged claims unpatentable. Appx233. The Board's decision was affirmed by this Court in a summary disposition. Appx235-236.

### *An ex parte reexamination on the '926 patent concludes. Claims 1-28, 32-39, 43, and 44-51 are invalidated.*

On April 13, 2012, Apple Inc. ("Apple") filed a request for *ex parte* reexamination on the '926 patent. Appx239. The Patent Office granted Apple's request and initiated reexamination. The Board reversed the

examiner's rejection of claim 29. It also affirmed the examiner's

rejection of claims 1-28, 32-39, 42 and 44-51 as obvious over various

combinations of Pad++ and other references. The Board's decision was

affirmed by this Court in a summary disposition. Appx265.

### *Apple and Motorola filed requests for inter partes reexamination.*

On May 20, 2011, Apple submitted a request for *inter partes*

reexamination ("IPX") of the '926 patent. Appx269. The Patent Office

granted Apple's request and, on August 8, 2011, instituted the IPX.

Appx807.

On August 31, 2012, Motorola Mobility, LLC ("Motorola")

submitted a request for IPX of the '926 patent. Appx3286. The Patent

Office granted Motorola's request and, on November 26, 2012, initiated

the IPX. Appx4180.

The two reexamination proceedings continued in parallel. In

Right of Appeal Notices issued on March 29, 2021 (for the Apple

reexamination) and on October 1, 2020 (for the Motorola

reexamination), the examiner sustained claims 29 and 78 but rejected

claims 1-28, 32-39, 42, 44-51, 53-54, 56-58, 60-68, 70-71, 73-74, 76-77,

and 79-88. Appx1556, Appx4530. (Many of these claims were held

unpatentable by the Board in the *ex parte* proceeding, but because this Court had not yet affirmed that holding, they were still pending in these *inter partes* proceedings.)  Apple and Motorola appealed the examiner's sustaining of claims 29 and 78, and SoftView appealed the examiner's rejection of claims 64 and 66.

### The Board holds claims 29, 64, 66, and 78 to be unpatentable as obvious.

On April 6, 2020, in materially identical decisions for both IPXs, the Board issued its Decisions on Appeal.  Appx1, Appx52.[2]

The Board agreed with Apple and Motorola that claims 29 and 78 were obvious, and entered two new grounds of rejection on these claims. Appx25-26.  In the first ground (referred to in SoftView's opening brief and here as "New Ground 1"), the Board found that the claims' CSS limitations were taught in light of the '926 patent's admission that conventional rendering engines (such as Mozilla's Gecko) could implement the claimed functionality.  Appx10-14.  In the second ground ("New Ground 2"), the Board found that the claims' CSS limitations

---

[2] Because the Board's decisions in the Apple and Motorola proceedings are materially identical, this brief will cite to the Apple proceedings.

were taught in light of the HTML 4.0 Specification's disclosure of cascading style sheets. Appx22-24.

The Board also disagreed with SoftView's appeal and affirmed the examiner's rejection of claims 64 and 66 as obvious in view of Pad++. Appx25-26. The Board noted in particular Pad++'s disclosure that "[w]hen you click on a piece of text, Pad++ zooms in so that that text fills the screen horizontally." Appx17 (quoting Appx654). On September 22, 2020, after SoftView requested rehearing, the Board issued decisions maintaining the rejections in its Decisions on Appeal. Appx30, Appx81.

SoftView now appeals from the Board's decisions.

## SUMMARY OF THE ARGUMENT

***First***, SoftView has not demonstrated error in the Board's New Ground 1 rejection of claims 29 and 78. SoftView contends that the Board failed to address all of the claim limitations. But because SoftView did not argue at the Board that any particular limitation was unknown, SoftView's argument is forfeited. And, in any event, substantial evidence supports the Board's finding that every limitation of claims 29 and 78 are taught by the art in New Ground 1.

Substantial evidence also supports the Board's findings that a person of skill would have had a motivation to combine and a reasonable expectation of success in combining the art in New Ground 1. Claims 29 and 78 claim the use of CSS to define layout and presentation attributes. But the '926 patent itself notes that that the processing of Web content to generate page layout information is "commonly performed by conventional browsers." And SoftView's expert confirmed that this commonly performed processing includes the parsing of CSS source code as recited in claims 29 and 78. The Board properly relied upon the AAPA in combination with other record evidence to find motivation to combine and reasonable expectation of success.

Substantial evidence further supports the Board's decision to reject SoftView's argument that the combination in New Ground 1 would be inoperative. The Board was permitted to credit disclosure in Pad++, which contemplates the implementation of Pad++ on "handheld computers," over the inapposite testimony of SoftView's expert.

**_Second_**, SoftView has not demonstrated error in the Board's New Ground 2 rejection of claims 29 and 78. Contrary to SoftView's

14

argument, substantial evidence supports the Board's finding that the
CSS limitations of claims 29 and 78 are taught by the art in New
Ground 2. The HTML 4.0 Specification expressly discloses "cascading
style sheets" that define layout and presentation attributes for a Web
page.

And, contrary to SoftView's contention, substantial evidence
supports the Board's finding that a person of skill would have had a
reasonable expectation of success in combining the art in New Ground
2. Pad++ discloses that it is an "HTML browser." The HTML 4.0
Specification discloses "cascading style sheets" as claimed in claims 29
and 78. The Board was permitted to credit these disclosures, along with
other record evidence, over SoftView's inapposite expert testimony.

***Third***, SoftView has not demonstrated error in the Board's
rejection of claims 64 and 66. SoftView contends that the cited art does
not teach the claims' "rendering engine" limitation. But SoftView
forfeited that argument because it was not raised when it should have
been raised—in SoftView's appeal brief to the Board. And SoftView is
estopped from making its "rendering engine" argument because it made

that same argument—and lost—in a prior Board decision affirmed by this Court.

Even if SoftView's "rendering engine" argument were procedurally proper, SoftView's assertion that the term "rendering engine" excludes the Pad++ browser lacks merit. The plain meaning of "rendering engine" includes the software within the Pad++ browser that renders Web pages. The district court decision cited by SoftView, which merely found the term "preserving" to be not indefinite, is not to the contrary.

Substantial evidence similarly supports the Board's finding that the "tapping" limitations were taught. Pad++ discloses that "when you click on a piece of text, Pad++ zooms in so that the text fills the screen horizontally." The Board was permitted to find from this and other Pad++ disclosure that tapping a column or paragraph to zoom into that column or paragraph would have been obvious.

***Fourth***, SoftView's procedural arguments lack merit. SoftView wrongly asserts that the Board erred in its use of AAPA in New Ground 1. Specifically, SoftView contends that AAPA cannot be "the basis" of a ground of rejection. But SoftView's argument is premised on a misinterpretation of the statute on which it relies. And, even if

16

SoftView's interpretation were correct, it is of no moment. New Ground 1 involved a multi-reference combination, of which the AAPA was only used for a single dependent-claim limitation. Considering the limited use of AAPA here, it cannot be said to be "the" basis of the ground.

What's more, SoftView's understanding of the law is mistaken. The Board is permitted to "rely upon the admissions by the … patent owner in a reexamination proceeding." The statutory section on which SoftView relies, pre-AIA 35 U.S.C. § 311, pertains only to the content of *requests* for IPX—not what the Patent Office can do after the reexamination has been ordered.

SoftView has not shown error in the Board's decision to adopt new grounds of rejection. The Board is permitted to enter new grounds of rejection either to reverse the examiner or to enter a ground not raised on appeal. The Board's New Ground 1 was properly entered to reverse the examiner's decision to not reject claims 29 and 78 on the basis put forth by Appellees. The Board's New Ground 2 was properly entered as a Board-initiated ground of rejection.

SoftView has not demonstrated a violation of the Administrative Procedure Act. SoftView contends that the Board's decision here with

respect to claims 29 and 78 is inconsistent with a prior decision by the Board sustaining claim 29.  But the grounds of rejection and the evidence in the record here are different from those in the prior proceeding.  And, contrary to SoftView's characterization, the holding in the prior proceeding has no bearing here.  SoftView has not demonstrated any inconsistency.

*Fifth*, Rule 42.73 estoppel provides this court with an alternative ground of affirmance on all claims at issue.  Rule 42.73 precludes a patent owner from "taking action inconsistent with [an] adverse judgment, including obtaining in any patent … a claim that is not patentably distinct from a … cancelled claim."  Here, Rule 42.73 precludes SoftView from disputing the unpatentability of the claims at issue.  That is because claims 29 and 78 are not patentably distinct from cancelled claim 66 of the '353 patent, and claims 64 and 66 are not patentably distinct from cancelled claims 12 and 14 of the '926 patent.

## STANDARD OF REVIEW

This Court "review[s] the Board's legal conclusions de novo and its factual findings for substantial evidence.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

18

support a conclusion." *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1367 (Fed. Cir. 2017) (citation and quotation marks omitted). It is "less than the weight of the evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). As such, "where two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

## ARGUMENT

### I. SoftView Has Not Demonstrated Error in the Board's New Ground 1.

Claim 29 recites a mobile device "wherein the HTML-based Web content includes cascading style sheet content defining layout and presentation attributes for the Web page." Appx1432. Claim 78 recites "wherein a portion of the HTML-based Web content comprises cascading style sheet data." Appx1446-1447. This brief will refer to these limitations collectively as the "CSS limitations." Put more plainly, the CSS limitations of claims 29 and 78 recite that the allegedly inventive system has support for cascading style sheets ("CSS"), a well-

known technique for defining webpage layout and presentation. The Board found that claims 29 and 78 were rendered obvious by New Ground 1 and, in particular, Pad++ and AAPA. Appx10-14. Substantial evidence supports the Board's finding.

## A. Substantial evidence supports the Board's claim-element analysis.

SoftView appears to argue that the Board erred by failing to consider all limitations of the claims in its analysis. Br. 26 ("[T]he Board does not show where all the claim elements in claims 29 and 78 are taught or suggested by the Mozilla rendering engine and Pad++ Tour (or any other art of record)"). SoftView's assertion lacks merit.

### 1.    SoftView's argument is improper.

As an initial matter, SoftView's argument is forfeited because it was not presented to the Board. In its appeal briefs to the Board, Apple and Motorola proposed the ground of rejection ultimately adopted by the Board as New Ground 1. Appx2188-2190; Appx4843-4845. SoftView's sole argument in response was its contention that the cited references would have been too difficult for a person of ordinary skill to combine. Appx2256; Appx4887. Even after the Board's Decision on Appeal adopted New Ground 1, SoftView's request for rehearing merely

reiterated SoftView's prior argument that a person of skill would not have been able to combine the cited art. Appx2452-2460. SoftView never argued to the Board that any particular limitation of claims 29 or 78 was unknown in the art. For example, though SoftView now appears to argue that New Ground 1 lacks "any PDA or mobile phone that a [person of ordinary skill in the art] could use" in the proposed combination, Br. 28, SoftView never made that argument to the Board. Having never argued to the Board that any particular claim element was not taught by the cited art, SoftView cannot present that argument now. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) (holding that arguments made on appeal to this Court were forfeited because they were not first presented to the Board).

## 2. The Board's finding that all limitations are taught is supported by substantial evidence.

Even if SoftView's argument were procedurally proper, substantial evidence supports the finding that every limitation of claims 29 and 78 is taught by the art in New Ground 1. As in initial matter, the CSS limitations were discussed in depth in the Board's decision on appeal and rehearing decision. Appx10-14, Appx31-36.

As to the limitations *not* expressly recited in claims 29 and 78, that is, those in now-cancelled independent claims 1 and 52 (upon which claims 29 and 78 depend), the Board incorporated by reference the detailed charts submitted by Apple.  In adopting New Ground 1, the Board referred to Apple's proposed rejection in its August 16, 2017 Comments.  Appx10 (citing Appx1202-1205).  In that paper, Apple explained that "[e]ven if the combinations of prior art on which the Office ordered reexamination were insufficient as to any of the pending claims, there is additional prior art" that, "in combination with the prior art of record[,] render[s] … the pending claims obvious."  Appx1202-1205.

That "prior art of record" included Pad++, which was analyzed in extensive claim charts explaining how Pad++ rendered claims 1 and 52 obvious.  Appx2189; Appx5189-5221.[3]  For example, contrary to SoftView's assertion, the claim charts explained how Pad++ discloses

---

[3] What's more, this Court affirmed the Board's decisions in related cases explaining in detail why Pad++ renders claims 1 and 52 (on which claims 29 and 78 rely) obvious.  Appx244-252, Appx267.

the claimed "mobile device." Appx5190. Thus, the Board's finding that all limitations were known is supported by substantial evidence.

## B. Substantial evidence supports the Board's reasonable-expectation-of-success finding.

SoftView contends that a person of ordinary skill would not have had a reasonable expectation of success in combining Pad++ and the admitted prior art, and contends that the Board erred by concluding otherwise. Br. 22-27. SoftView's challenge, which is entirely factual, lacks merit.

As an initial matter, SoftView's framing of the skilled artisan's task here—in essence, modifying Mozilla's source code to implement Pad++'s features—misunderstands the nature of the obviousness analysis. Br. 26-27 (faulting the Board for not explaining "how the Mozilla rendering engine would be modified by the teachings in Pad++ Tour"). The question is not how Mozilla code would, in a literal sense, be modified to incorporate the teachings of Pad++; the question is whether a person of ordinary skill, with the AAPA (including Mozilla) and other references (e.g., Pad++) at hand, would learn enough from their disclosures to find the claimed invention obvious. "There is a distinction between trying to physically combine the two separate

23

apparatus disclosed in two prior art references on the one hand, and on the other hand trying to learn enough from the disclosures of the two references to render obvious the claims in suit." *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983).  Because SoftView "touche[s] upon the former, but ignore[s] the latter," it misses the mark.  *See id.*

In any event, the Board had substantial evidence from which to conclude that a skilled artisan would have had a reasonable expectation of success in combining the teachings in New Ground 1.

*First*, the '926 patent itself notes that "the functions performed in blocks 150, 152, and 154 [of Fig. 5]"—that is, the functionality claimed in the CSS limitations—is "commonly performed by *conventional browsers* during a pre-rendering process."  Appx141(17:31-41) (emphasis added).  And the '926 patent does not itself disclose how to achieve the claimed functionality, but instead "uses core functionality provided by the Mozilla rendering engine source code to perform the functions of block[s] 150, 152, and 154."  Appx141(17:31-41).  Other than its instruction to use the Mozilla rendering engine, the '926 patent provides no teaching as to how to implement the CSS limitations.  This

evidence amply supports the Board's finding that a skilled artisan would have known—and would have had a reasonable expectation of success in using—an off-the-shelf rendering engine (e.g., Mozilla) to implement the CSS limitations. Appx85 (finding from the '926 patent that "parsing and processing the HTML [and] CSS source code and generat[ing] HTML objects in the Mozilla rendering engine" was "well known in the art"); *Trs. of Columbia Univ. v. Illumina, Inc.*, 620 F. App'x 916, 928–29 (Fed. Cir. 2015) (finding that the specification's lack of guidance in making the claimed invention, other than a reliance on "well-established procedures," supports a finding that a person of skill would have had a reasonable expectation of success in making the claimed invention).

SoftView appears to contend that the '926 patent's disclosure does not support the Board's reasoning because, to SoftView, "CSS is separate from HTML." Br. 32. But, as explained in more detail below, substantial evidence supports the Board's finding that CSS is disclosed by the HTML 4.0 Specification. Appx23; Section II.A. And, regardless, the Board supportably found that the "conventional browsers" referred

to in the '926 patent have support for both HTML and CSS.  Appx11 (quoting Appx1767(¶16)).

***Second***, the Board's finding is further supported by expert testimony.  Apple's expert, Dr. Jack Grimes, explained in substantial detail why it "would have been within the capabilities of one of ordinary skill in the art at the time of the invention to either add to the existing coding of the Pad++ zoomable browser to support additional HTML tags, to write original code, or to modify a pre-existing browser." Appx1253(¶84); *see also* Appx1252-1256(¶¶79-90).[4]  Even SoftView's expert, Wolf,[5] acknowledged that the rendering engine described as conventional in the '926 patent, Mozilla's Gecko, "parse[s] and process[es] the HTML and CSS source code and generate[s] HTML objects and associated page layout information, including bounding boxes."  Appx1767(¶16).  Expert testimony thus supports that a skilled

---

[4] Although the cited testimony from Dr. Grimes was initially filed in the *Kyocera* IPRs, it was cited by Apple in its Appeal Brief to the Board and thus is part of the record in this case.  *E.g.*, Appx2178.

[5] As he explains in his declaration, "Wolf" is SoftView's expert's full legal name.  Appx1763(¶1).

artisan would have been able to perform the CSS limitations using a conventional browser with a reasonable expectation of success.

   **Third**, the Board supportably rejected SoftView's evidence. SoftView makes much of Mozilla's purported difficulties in developing a zoomable browser.  Br. 22-25.  But the Board explained why this evidence was unpersuasive.  The Board noted that Mozilla's task involved the "specific situation of implementing HTML 4.0 with [CSS] 2," whereas neither claim 29 nor claim 78 "recites a specific HTML version [or] a specific CSS version."  Appx13.  To the extent that SoftView asserts that its evidence supports the secondary consideration of a failure of others to make the invention, such evidence cannot be accorded any weight where, as here, the Board correctly found no nexus to the claims.  *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995).

   What's more, SoftView's argument conflates the time taken to develop a piece of software and the patent-law concept of "experimentation" when the two are not the same.  It is undisputed that at the time of the invention multiple browsers had implemented at least some form of HTML and CSS.  Br. 61; Appx1782(¶64). Thus, even if the implementation of yet another browser supporting the CSS could be

considered "experimentation" at all, it would certainly be the sort of "routine" experimentation that does not suggest a lack of a reasonable expectation of success in combining the cited art. *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1339 (Fed. Cir. 2013) (The question of enablement "is not merely quantitative, since a considerable amount of experimentation is permissible, if it is merely routine, or if the specification in question provides a reasonable amount of guidance.").  The Board was permitted to discount evidence regarding Mozilla's efforts to develop a zoomable browser.

Substantial evidence supports the Board's reasonable expectation of success finding.

## C.    SoftView's conclusory challenge to the Board's motivation-to-combine finding should be rejected.

SoftView appears to challenge the Board's finding that a person of ordinary skill would have been motivated to combine the art cited in New Ground 1.  Br. 27 (implying that the Board failed to "provide a 'satisfactory explanation' for [its] motivation finding").  But SoftView's argument appears to be either (1) a rehash of its meritless reasonable-expectation-of-success argument, discussed above in Section I.B; or (2) entirely conclusory.  Appx11.  The Board found that SoftView's

motivation-to-combine argument was "in direct contradiction" with its expert's testimony.  Appx13.  SoftView has not provided any basis for second-guessing the Board's finding.

### D.    SoftView's teaching away argument lacks merit.

In its opinion, the Board cited *In re Keller* for the proposition that the test for obviousness is not whether references can be "bodily incorporated" into each other but instead "what the combined teachings of the references would have suggested to those of ordinary skill in the art."  642 F.2d 413, 425 (C.C.P.A. 1981).  On appeal, SoftView attempts to distinguish *Keller* by asserting that "[a] PHOSITA would determine the combined teachings would lead to an inoperative device," and thus, to SoftView, the cited art "teaches away" from the claimed combination.  Br. 34.

SoftView's teaching-away argument is forfeited.  SoftView never argued to the Board that the cited art teaches away from the claims based on an assertion that the combination at issue would be inoperative.  Now, SoftView appears to repackage factual assertions that it made regarding the reasonable-expectation-of-success and motivation-to-combine issues as allegedly demonstrating that the

combination at issue would be inoperable. But having not made its teaching-away argument to the Board, SoftView cannot make it now. *Google*, 980 F.3d at 863.

In any event, the Board considered all of the evidence on which SoftView now relies and its decision to discount that evidence was supported by substantial evidence. Appx34-35. The Pad++ references teach that the "system is being designed to operate on … PDAs." Appx470. And, as the Board noted, Pad++ teaches that implementing zoomable applications such as browsers would be "especially attractive for systems which have small screens, such as handheld computers (i.e., PDAs)." Appx14 (citing Appx741). From this evidence, the Board was permitted to find that the teachings of the cited art could be combined.

The Board's conclusion is further supported by expert testimony. Dr. Bederson, the creator of Pad++, testified that Pad++ could have run on PDAs. Appx254. And Dr. Grimes explained that a skilled artisan could have "adapt[ed] the code of a full-fledged browser to create a zooming functionality," or "writ[ten] original code" to do the same. Appx1253(¶¶83-84).

SoftView relies on the Board's statement that "Patent Owner's evidence may demonstrate that specific combinations of commercially available products-HTML, Web browsers (e.g., Netscape Navigator or Microsoft Internet Explorer), and PDAs (e.g., Nokia, Palm, or Apple Newton devices) – *were not physically compatible in 2000-2001*." Br. 33-34 (quoting Appx40) (emphasis in SoftView's brief). But the Board's statement does not make SoftView's point. Whether these commercially available products were physically compatible is not the relevant question; instead, the question is whether "a skilled artisan would have been motivated to combine the *teachings* of the prior art references." *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016) (emphasis added); Appx86 (the Board noting that "the test [for obviousness] is what the combined *teachings* of the references would have suggested"). Substantial evidence supports the Board's finding that a skilled artisan would have been willing and able to combine the teachings of the cited art.

## II.    SoftView Has Not Demonstrated Error in the Board's New Ground 2.[6]

In New Ground 2, the Board found that the combination of Pad++ Tour and the HTML 4.0 Standard renders obvious claims 29 and 78. Appx24.

The Board explained its reasoning in its Decision on Appeal. Quoting Pad++ Tour, the Board noted that the "Pad++ HTML browser" was "a zoomable Web browser."  Appx22 (quoting Appx691, Appx686). The Board further noted that the HTML 4.0 Standard relates to HTML, which is "the publishing language used by the World Wide Web." Appx23 (quoting Appx2522).  The Board, quoting from the HTML 4.0 Specification, explained:

> "Style sheets represent a major breakthrough for Web page designers, expanding their ability to improve the appearance of their pages.  In particular, [the HTML 4.0 Specification] explains that a 'cascading' style sheet 'is the capability provided by some style sheet languages such as CSS to allow style information from several sources to be blended together.'"

---

[6] If the Court affirms the Board on New Ground 1, it need not reach New Ground 2.  And if the Court affirms the Board on New Ground 2, it need not reach New Ground 1.

Appx23 (quoting Appx2692-2693) (citations omitted). The Board thus

concluded that "[a] person of ordinary skill in the art would have

recognized that incorporating the cascading style sheets of [the] HTML

4.0 Standard with the Pad++ HTML browser of Pad++ Tour would have

improved Pad++ Tour by providing the advantage of improving the

appearance of Web pages, including style information from several

sources." Appx23-24.

On appeal, SoftView contends that the Board erred in concluding

that the combination of Pad++ Tour and the HTML 4.0 Specification

renders claims 29 and 78 obvious. SoftView's challenges should be

rejected.

### A.    Substantial evidence supports the Board's finding that the cited art teaches "cascading style sheet content" as recited in claims 29 and 78.

SoftView first argues that New Ground 2 lacks any disclosure of

the CSS limitations. Br. 34-42. Specifically, SoftView asserts that "the

HTML 4.0 specification does not provide any details regarding how to

implement [CSS 1]." Br. 36. SoftView asserts: "[t]o meet this

limitation, it would be necessary to implement at least CSS 1 in

conformance with the CSS 1 specification, which is separate and apart

from the HTML 4.0 Standard." Br. 42 (citations omitted). Thus, to SoftView, because New Ground 2 includes the HTML 4.0 Specification, but not the CSS 1 or CSS 2 Specifications, New Ground 2 fails to teach the claims' CSS limitations.

To start, SoftView's position is premised on an incorrect understanding of the claim language. As the Board concluded, neither claim 29 nor claim 78 requires that the CSS be compliant with a particular standard (e.g., CSS 1 or CSS 2). Appx13. So long as a style sheet has a cascading capability, it is a "cascading style sheet" as recited by the claims.[7]

SoftView's attempt to narrow the claims beyond their plain meaning lacks merit. SoftView relies on Wolf's testimony that "[t]here would be no motivation to partially implement HTML 4 or to be able to render a limited set of HTML elements in a non-compliant manner." Br. 42 (quoting Appx1770). But the quoted testimony from Wolf does

---

[7] Whereas the CSS 1 and CSS 2 standards require specific syntax and provide certain defined features, the term "cascading style sheets" generally refer to any programming language that can be used to specify the appearance of Web pages. Appx2693 (distinguishing the "CSS" standards from style sheets generally).

34

not refer to CSS. And, regardless, Wolf's testimony cannot override the unambiguous language of the claims, which do not require compliance with any particular standard. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc).

Regardless, substantial evidence supports the Board's finding that "implementation of CSS in the HTML markup language" was "well known in the art." Appx38. The abstract of the HTML 4.0 Specification notes that it "supports … style sheets." Appx2522. The HTML 4.0 Specification describes style sheets and their use to define layout and presentation attributes for webpages. Appx2542 (noting that style sheets "give both authors and users control over the presentation of documents"), Appx2542 (noting that style sheets are a replacement for previous "means for laying out pages"), Appx2572 (describing the HTML element used for "style sheet data"), Appx2585 (describing the use of in-line and linked style sheets). And the HTML 4.0 Specification has a detailed chapter on style sheets including "cascading" style sheets. Appx2692-2703.

Even if the HTML 4.0 Specification itself did not fully disclose "cascading style sheet content," any gaps would be filled in by the

knowledge of a skilled artisan.  Dr. Grimes testified that a person of

ordinary skill at the time would be familiar with CSS.  Appx1311(¶10).

Wolf similarly testified that a person of ordinary skill would have

known of the CSS 1 and CSS 2 Specifications.  Appx1770 ("[A]nyone (or

company) developing a Web browser would want to have the browser

comply with HTML 4/4.01 and relevant portions of CSS 1 and CSS 2.").

And the HTML 4.0 Specification itself repeatedly refers to both the CSS

1 and CSS 2 Specifications.  *E.g.*, Appx2844, Appx2046.  Thus, a person

of ordinary skill reading the HTML 4.0 Specification would turn to the

CSS 1 and CSS 2 Specifications to provide additional detail on the

disclosure in the HTML 4.0 Specification itself.

**B.    Substantial evidence supports the Board's finding
that the cited art teaches that the CSS content
"define[s] layout … attributes"**

Claim 29 (but not claim 78) recites that the "cascading style sheet

content" "define[s] layout and presentation attributes for the Web

page."  Appx145(25:65-68).

SoftView's assertion the CSS disclosed in the HTML 4.0

Specification does not define "layout" attributes lacks merit.  Br. 36.  As

an initial matter, this argument does not apply to claim 78, which does

not include a "layout" requirement.  And there is ample support in the

HTML 4.0 Specification for the CSS defining layout attributes.  The

Specification notes that style sheets are a replacement for previous

"means for laying out pages."  Appx2542.  The Specification includes

examples of CSS being used for layout, e.g., by centering text.

Appx2696 (describing a "CSS STYLE declaration" that "centers [every

H1 element] on the page").  And, as explained above, any gaps in the

HTML 4.0 Specification's express disclosure would be filled in by a

skilled artisan's knowledge of CSS, which the Board correctly found to

be "well known in the art."  Appx89.

## C.    Substantial evidence supports the Board's reasonable-expectation-of-success finding.

SoftView argues that the New Ground 2 combination does not

render the claims obvious because, to SoftView, a person of ordinary

skill in the art would not have had a reasonable expectation of success

in implementing the HTML 4.0 Specification.  Br. 42-53.  Because

substantial evidence supports the Board's reasonable-expectation-of-

success finding, SoftView's argument should be rejected.

1.     **Substantial evidence supports the Board's conclusion that a person of ordinary skill in the art would have a reasonable expectation of success in combining the teachings of New Ground 2.**

The Board explained why a skilled artisan would have had a reasonable expectation of success here. The Board explained that "Pad++ discusses the use of an HTML browser on a zooming user interface, and [the] HTML 4.0 Standard discusses features of the HTML publishing language, including a cascading style sheet. Because both references relate to HTML, the identical publishing language used by the World Wide Web, the proposed modification of Pad++ with [the] HTML 4.0 Standard would result [in] a reasonable expectation of success." Appx90.

The '926 patent's disclosure further supports the Board's finding here. Although SoftView faults the HTML 4.0 Specification for not providing "methods" for implementing the standard, the '926 patent itself does not provide "methods" for implementing HTML or CSS. Instead, the '926 patent notes that "a pre-rendering parsing of the HTML is performed to determine where to place the various objects on the display page," and that "these functions are performed by the

Mozilla rendering engine." Appx140-141(15:45-55, 17:31-36).

Substantial evidence thus supports the Board's conclusion that

SoftView's reasonable-expectation-of-success argument: "(i) directly

conflict[s] with the admissions from column [15], lines 45-55 and

column 17, lines 31-41"; and "(ii) apparently undermine[s] the

presumption of enablement for the '926 patent." Appx85.

### 2.    SoftView's arguments against a reasonable expectation of success lack merit.

SoftView contends that implementing the HTML 4.0 Specification

"would involve an extraordinary level of experimentation and failure

along the way, as would be recognized by a PHOSITA at the time of the

invention." Br. 44.

However, substantial evidence supported the Board's finding that

a skilled artisan would have been able to implement a browser

supporting the CSS limitations from the HTML 4.0 Specification. The

Board found that "in a single printed publication, [the] HTML 4.0

Standard provides information with respect to both: (i) HTML

documents; and (ii) the improvement of HTML document appearance

using cascading style sheets." Appx38. And although SoftView asserts

that implementation of the HTML 4 Specification is "left up to the

organization developing the [browser]," Br. 49, the Board also found

that "implementation of CSS in the HTML markup language" was "well

known in the art." Appx38. These findings, which SoftView has not

shown to be erroneous, support the Board's conclusion that SoftView

did not overcome the presumption that the HTML 4.0 Standard is

enabled. Appx38.

Dr. Grimes' testimony supports the Board's conclusion. He

testified, with significant supporting detail, that "it would have been

within the capabilities of one of ordinary skill in the art at the time of

the invention to either add to the existing coding of the Pad++ zoomable

browser to support additional HTML tags, to write original code, or to

modify a pre-existing browser" to achieve the claimed invention.

Appx1253(¶84); see also Appx1253-1256(¶¶85-90).

Although SoftView compares this case to *White Consolidated*

*Industries, Inc. v. Vega Servo-Control, Inc.*, 713 F.2d 788 (Fed. Cir.

1983), that case is inapposite. Br. 51. First, SoftView contends, *White*

stands for the proposition that if a combination requires 1.5 to 2 man-

years of effort to implement, then the combination is not enabled. *Id.*

Second, SoftView asserts, implementing a fully HTML and CSS-

40

compliant browser would take dozens of man-years. Br. 51-52. Thus, to SoftView, the New Ground 2 combination would require undue experimentation. Both of SoftView's premises are incorrect.

*First*, *White* did not announce a per se rule that 1.5 to 2 man-years of implementation effort constitutes undue experimentation. In *White*, the patent at issue was found non-enabled because it required a software module that was not available to the public and that would need 1.5 to 2 years to create. 713 F.2d at 790-91. However, *White*'s holding was based not only on development time, but also the fact that no suitable substitutes for the required software module were known and available. *Id.* Here, SoftView does not dispute that a multitude of browsers supporting HTML and CSS were already known in the art, Br. 61, and at least one (Mozilla) was open source. Thus, to the extent that developing yet another Web browser could be said to be "experimentation" at all, it would be the sort of "routine" experimentation that provides no barrier to enablement. *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996) (noting that the test for enablement is "not merely quantitative," and

that "a considerable amount of experimentation is permissible[] if it is merely routine").

**Second**, substantial evidence supported the Board's decision to discount SoftView's assertion that it would take dozens of man-years to implement the combination at issue here. Appx12-13. The evidence upon which SoftView relies—namely, the purported difficulties in developing Mozilla's Gecko and Microsoft's Internet Explorer, Br. 52— involved functions (e.g., full HTML and CSS compliance) that are not claimed here. Appx13 (noting that SoftView's difficulty-of-implementation argument was "not commensurate in scope with claim 29"); *GPAC*, 57 F.3d at 1580. And Dr. Grimes testified that a person of ordinary skill could have started from a pre-existing browser's code base and thus would not have had to create a new browser from scratch. Appx1253(¶84).

In sum, the Board had substantial evidence from which to conclude that a person of skill would have had a reasonable expectation of success in combining the art cited in New Ground 2 to arrive at the claimed invention.

## III.  SoftView Has Not Demonstrated Error In The Board's Rejection Of Claims 64 And 66.

The Examiner rejected claims 64 and 66 as being rendered obvious by the Pad++ references.  Appx50-51.  The Board affirmed the Examiner's rejection.  Appx14-22.  On appeal, SoftView contends that the Board erred in concluding that the cited art teaches the "rendering engine" and "tapping" limitations.  But, as explained below, the Board's decision was backed by substantial evidence.

### A.    SoftView has not shown error regarding the "rendering engine" limitation.

Claims 64 and 66 each depend upon independent claim 52. Appx147(30:17-24, 30:33-41).[8]  Claim 52 recites in relevant part:

> re-render[ing] the Web page in response to associated user inputs to enable the user to iteratively zoom in and out views of the Web page while preserving and original page layout, functionality, and design defined by the HTML-based Web content as interpreted by a rendering engine.

Appx147 (29:27-32).  This limitation is sometimes called the "preserving limitation."  Appx209.  SoftView appears to contend that Pad++ fails to

---

[8]  During the reexamination at issue, SoftView amended claims 64 and 66 to rewrite them in independent form.  Appx1102-1105.  But because the '926 patent has now expired, these amendments will not be entered. 37 C.F.R. § 1.530(j)-(k); Br. 62 (SoftView acknowledging same).

meet this limitation because it lacks the recited "rendering engine." Br. 60 ("The Pad++ browser is not a rendering engine."). Specifically, SoftView attempts to draw a distinction between the Pad++ browser (which, according to SoftView, only supports "a handful of HTML tags" and is "rudimentary") and rendering engines like Mozilla's Gecko (which, to SoftView, "employ many modules and sub-modules"). Br. 60-61. SoftView's attempt to establish the patentability of claims 64 and 66 on the basis of the "rendering engine" limitation must fail.

### 1. SoftView's "rendering engine" argument is improper.

SoftView forfeited its "rendering engine" argument by failing to timely raise it to the Board. After the Examiner issued the Right of Appeal Notice, Appx1556, SoftView appealed the Examiner's rejection of claims 64 and 66, Appx1715-1731. But SoftView did not argue in its Appeal Brief that the "rendering engine" limitation rendered claims 64 and 66 patentable. *Id.* Having not timely raised its "rendering engine"

argument to the Board, SoftView cannot maintain that argument here.[9]

*Google*, 980 F.3d at 863.

In addition, SoftView is estopped from using its "rendering engine" argument to establish the patentability of claims 64 and 66. The "rendering engine" limitation is in claim 52. The Board found claim 52 to be unpatentable in a 2014 decision that was affirmed by this Court. Appx234-235. Notably, the Board's 2014 decision considered—and rejected—the argument SoftView now makes. Appx220 ("Although neither Zaurus nor Bederson [i.e., Pad++] implement[] each and every feature of HTML … both Zaurus and Bederson disclose preserving the layout, functionality, and design of the part of the web page that is ……interpreted by the rendering engine (claim 52)."). SoftView does not contend that any limitation in claim 64 or 66 modifies claim 52's "rendering engine" so as to render the term patentably distinct from its

---

[9] SoftView might arguably have made its "rendering engine" argument its Request for Rehearing. Appx2468-2470. But even if that were true, it would be too late. A request for rehearing must identify "points believed to have been misapprehended or overlooked in rendering the Board's opinion"—not make new arguments in the first instance. 37 C.F.R. § 41.79(b)(1). Although Rule 41.79(b)(3) provides an exception for new grounds of rejection issued by the Board, that exception does not apply to claims 64 and 66.

use in claim 52. Nor can it; neither claim 64 nor 66 even recites the "rendering engine." SoftView had its chance (in the IPR proceedings that ultimately cancelled claim 52) to litigate its "rendering engine" argument. It did, and lost. SoftView cannot relitigate that argument here. *VirnetX Inc. v. Apple, Inc.*, 909 F.3d 1375, 1378 (Fed. Cir. 2018).

## 2. SoftView's "rendering engine" argument is wrong on the merits.

Even if the argument were procedurally proper, SoftView's assertion that the term "rendering engine" excludes the Pad++ browser lacks merit. By its plain meaning, a rendering engine is software that renders something. The specification uses the term "rendering engine" consistent with that meaning. Appx141. The Pad++ browser renders Web pages. *E.g.*, Appx686. Thus, Pad++ discloses a rendering engine. As the Board found in its IPR Final Written Decision, there is no requirement that the rendering engine match the features of a conventional desktop browser. Appx211. Where, as here, the intrinsic evidence is clear, SoftView's expert testimony to the contrary cannot override the claims' plain meaning.

Contrary to SoftView's contention, there is no inconsistency between the Board's construction of the "preserving limitation" in the

46

IPR and a district court's construction of "preserving." In its IPR Final Written Decision, the Board construed the "preserving limitation" to mean "maintains the features of the web page's capabilities and appearances in a manner consistent with the translated portion of HTML code defining those capabilities and appearances." Appx211. Notably, the Board rejected SoftView's position that the "original page layout" being "preserv[ed]" must "conform[] to one … rendered by a conventional desktop browser."[10] Appx209. The district court's claim construction opinion found the term "preserving" to be not indefinite (under the now-abrogated "insolubly ambiguous" standard). Appx2422-2424. The district court declined to expressly construe the term and instead adopted a plain-and-ordinary-meaning construction. *Id.* SoftView has not explained specifically what the tension is between the district court's ruling and the Board's, and there is none.

---

[10] The Board did not rely, as SoftView charges, on "demonstrably false statements in Dr. Grimes' reply declaration." Br. 59. SoftView has not explained what about Dr. Grimes' testimony is "demonstrably false." *Id.* And, regardless, the Board did not cite in its decision the testimony that SoftView's brief quotes.

## B.     SoftView has not shown error regarding the "tapping" limitations.

Claim 64 recites:

> enabling a user to view a column of Web content at a higher resolution than a current resolution by tapping on the column via the touch-sensitive display, wherein in response thereto, the display is re-rendered such that content corresponding to the selected column is displayed across the touch-sensitive display.

Appx147(30:17-24).  Claim 66 recites:

> enabling a user to view a paragraph of the Web content at a higher resolution than a current resolution by tapping on the paragraph via the touch-sensitive display, wherein in response thereto, the display is re-rendered such that content corresponding to the selected paragraph is displayed across at least one of a width and height of a display area of the touch-sensitive display.

Appx147(30:33-41).

In short, claims 64 and 66 each recite a mobile device with zoomable browser (as claimed by now-invalidated claim 52) wherein tapping on a column/paragraph causes the selected column/paragraph to be "blown up," that is, displayed across the screen.  For ease of reference, the limitations recited above will be referred to as the "tapping" limitations.

SoftView asserts that Pad++ does not teach the tapping limitations. Specifically, SoftView asserts that the "tapping" limitations require that, after the tapping, no other action may be performed by the user before the column or paragraph is displayed across the screen. Br. 70. To SoftView, Pad++ does not meet that requirement. But, even under SoftView's construction, substantial evidence supports the Board's finding that the "tapping" limitations are met.

The Board explained in detail how the Pad++ references teach the tapping limitations. Appx14-18. First, the Board explained how Pad++ teaches multi-column display:

> When you follow a link, the relevant document is loaded into Pad++ and placed on the surface to the right of the original document, at a smaller scale. Here you can see the 'Pad++ Multiscale interfaces' document loaded beside the home page.
>
> *The Pad++ HTML browser will lay out sub-documents in two columns next to the parent document.* Because Pad++ is zoomable, there is always enough space between those two columns for placing further documents reached from those sub-documents!

Appx17 (quoting Appx691) (emphasis added). The Board also explained how Pad++ teaches zooming in response to clicking text:

> *[W]hen you click on a piece of text, Pad++ zooms in so that that text fills the screen horizontally* and appears near the top of the screen vertically.

Appx17 (quoting Appx668) (emphasis added).  And the Board explained that Pad++ contemplates the use of "handheld computers" such as PDAs.  Appx17-18 (quoting Appx741).  Tapping would replace clicking as the user input method on such devices.  Appx18.  Thus, the Board explained, Pad++ Tour teaches the "tapping" limitations.

SoftView's reliance on the Examiner's Right of Appeal Notice ("RAN") misses the mark.  SoftView contends that, in the RAN, the Examiner found that "manual/dynamic zooming" met the "tapping" limitations, and that this finding was contrary to the limitations' proper construction.  Br. 71 (quoting Appx1401).  But SoftView's contention, even if accepted, is of no moment.  On rehearing, the Board considered the argument SoftView now makes and found that Pad++ teaches the "tapping" limitations under the construction SoftView now advances. Appx40-42 (confirming that Pad++ teaches the "tapping" limitations being performed in a "single zooming operation," and not "two separate zooming operations").  The Board's finding was supported by substantial evidence.

SoftView's contention that the Board relied on two distinct Pad++ applications similarly lacks merit.  SoftView contends that the Board relied on disclosure about the Pad++ "outline viewer" which, SoftView asserts, is a separate application from Pad++ itself.  Br. 71-80.  But the Board considered SoftView's argument on rehearing and confirmed that it relied upon the Pad++ "HTML browser," not "the 'outline viewer,' as argued by [SoftView]."  Appx45.  Substantial evidence supports the Board's finding that the Pad++ HTML browser can implement the relied-upon zoom operation.  Appx708 (noting that the "Pad++ HTML browser" can implement hyperlinks "[s]imilarly" to the Pad++ outliner).  And SoftView's contention that the relied-upon disclosure only pertains to the Pad++ outline viewer, even if correct, is of no moment.  The relevant issue here is obviousness, not anticipation, and the Board was permitted to combine teachings from separate sources in its obviousness analysis.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007).

Finally, SoftView appears to assert that Pad++ does not support bounding boxes and thus, to SoftView, Pad++ cannot teach the "tapping" limitations.  Br. 80-85.  But the Board considered and rejected that argument.  It explained that "[SoftView's] arguments are not

commensurate in scope with either claim 64 or 66, because the claims do not recite 'bounding box.'" Appx20. SoftView does not appear to dispute this on appeal, but instead contends that bounding boxes are nevertheless required because they "would be necessary to enable the functionality claimed." Br. 83-84. But there is substantial evidence that Pad++ did internally use bounding boxes. Appx449 (Pad++ uses "bounding boxes" for "visibility checks"), Appx488 (Pad++ "[o]bjects are stored internally in a hierarchy based on bounding boxes."), Appx1319 (Dr. Grimes testifying that items in Pad++ are "laid out using bounding boxes"). And, even if Pad++ did not use bounding boxes, it nevertheless discloses that "[w]hen you click on a piece of text, Pad++ zooms in so that that text fills the screen horizontally and appears near the top of the screen vertically." Appx668. The Board was permitted to find from this and other Pad++ disclosure that the "tapping" limitations were taught (regardless of how implemented internally).

## IV. SoftView's Procedural Arguments Lack Merit.

### A. SoftView has not shown error in the Board's use of admitted prior art.

SoftView argues that the Board's use of admitted prior art ("AAPA") as part of New Ground 1 was improper. Br. 14-20.

Specifically, SoftView contends that the pre-AIA versions of 35 U.S.C. §§ 301(a)(1) and 311 prevent the Board from using AAPA as the basis for a ground of rejection.  Br. 15.  SoftView is mistaken.  Pre-AIA section 311 only limit the contents of *requests* for IPX, and SoftView does not identify any impropriety in the requests here.  And even under SoftView's flawed understanding of the law, the Board's limited use of AAPA here does not run afoul of section 311.

> ### 1.   SoftView does not dispute the propriety of the reexamination proceedings before the Board's decision.

SoftView does not dispute that before the to the Board's decision on appeal, all stages of the IPXs at issue were properly conducted.

SoftView does not dispute that third-party requesters' (Apple's and Motorola's) requests for IPR were consistent with section 311. Section 311 provides that "[a]ny third-party requester … may file a request for [IPX] … on the basis of any prior art cited under the provisions of section 301." 35 U.S.C. § 311 (2011).  SoftView understands this language to prevent reliance on admitted prior art. But both requests at issue here (filed by Apple and Motorola) relied entirely on prior-art printed publications and patents, not admitted

prior art, and SoftView does not contend otherwise.  Appx272-273, Appx3287-3293.  Thus, the supposed section 311 bar on AAPA poses no problem to the requests for IPX at issue here.

SoftView similarly does not dispute that Patent Office's decisions to grant the requests for IPX were in accordance with law.  In granting the requests at issue here, the Patent Office made clear that it was granting the requests based on the prior-art patents and printed publications cited in those requests and *not* on the basis of admitted prior art.  Appx808 (noting that "[a] total of twelve references in various combinations have been asserted in the request").  SoftView does not contend that the Patent Office's decision ordering IPX was contrary to law.

And, regardless, the Board would have been permitted to consider AAPA when deciding whether to grant a request for IPX.  The Board's authority to do so follows from this Court's reasoning in *In re Lonardo*, 119 F.3d 960 (Fed. Cir. 1997).  In *Lonardo*, the patentee had argued that the Board's use of a non-prior-art reference in granting a request for *ex parte* reexamination was contrary to statute.  This Court rejected that argument, finding authorization in 35 U.S.C. § 303.  Pre-AIA

section 311 (pertaining to *inter partes* reexaminations) has language

identical to section 303; both statutes permit the Patent Office to

consider "other patents or printed publications" besides those submitted

by the third-party requester.  35 U.S.C. §§ 303, 311 (2010).  And the use

of AAPA here, like the double patenting rejection in *Lonardo*, involves a

non-prior-art patent; there, it was an earlier-issued family member of

the challenged patent, and here it is the challenged patent itself.

Appx11.

SoftView does not dispute that the reexamination proceedings

before the examiner were proper.

### 2.     The Board's use of AAPA was proper.

SoftView's challenge centers specifically on the Board's use of

AAPA in its Decision on Appeal.  But statute and regulation authorize

the Board to consider AAPA in IPXs.

Once reexamination is initiated, statute directs the Patent Office

to proceed with reexamination in the same manner as "initial

examination."  35 U.S.C. § 314 (2011) ("Except as otherwise provided in

this section, reexamination shall be conducted according to the

procedures established for initial examination under the provisions of

sections 132 and 133."). This is implemented by 37 C.F.R. § 1.937, which notes that "[t]he inter partes reexamination proceeding will be conducted in accordance with §§ 1.104 through 1.116, the sections governing the application examination process." As relevant here, 37 C.F.R. § 1.104 permits it to "rely upon the admissions by the … patent owner in a reexamination proceeding[] as to any matter affecting patentability." 37 C.F.R. §§ 1.104(c)(3).

When IPXs are appealed to the Board, those proceedings are governed by the same statutory framework as appeals of initial examinations. 35 U.S.C. § 315 (2011) (noting that the patent owners and third-party requesters "may appeal under the provisions of section 134," which governs appeals of initial examinations to the Board). Section 315 is implemented by 37 C.F.R. § 1.959, which provides that IPX appeals "are conducted according to part 41 of this title." Part 41, in turn, permits the Board to issue a "new ground of rejection" on "any grounds not raised in the appeal." 37 C.F.R. § 41.77.

Thus, because the Board was permitted to issue new grounds of rejection, 37 C.F.R. § 41.77, and in doing so was permitted to rely on

applicant admissions, 37 C.F.R. § 1.104, the Board's use of AAPA was proper.

SoftView's contention that the Board's use of AAPA in the New Ground 1 violated Section 311 lacks merit.  As noted above, Section 311 only pertains to the bases of a third-party requester's *request* for IPX— not anything that happens in IPX once initiated.  Specifically, Section 311 provides that "[a]ny third-party requester … may file a request for [IPX] … on the basis of any prior art cited under the provisions of section 301."  35 U.S.C. § 311 (2011).  Section 311 has no relevance where, as here, the request for IPX has been granted and reexamination is underway.  SoftView's reliance on section 311 is thus misplaced.

SoftView's reliance on *Qualcomm v. Apple* is similarly misplaced. *Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367, 1369 (Fed. Cir. 2022). *Qualcomm* held that AAPA could not be the basis for a petition for *inter partes review* ("IPR").  But the situation here is materially different.  In *Qualcomm*, the Court's holding followed from its interpretation of AIA section 311, which limits the scope of a petition for IPR to be "only on the basis of prior art consisting of patents or printed publications."  35 U.S.C. § 311 (2023).  That section does not apply to IPXs, at issue here.

What's more, *Qualcomm* relates to what can be in a *petition* for IPR, and the issue here is *not* what can be in a *request* for IPX. SoftView makes much of the fact that the pre-AIA version of section 311 (via its reference to section 301) uses the phrase "prior art consisting of patents or printed publications," which is the same phrase at issue in *Qualcomm*. Br. 18. But even assuming that SoftView is correct that the phrase "prior art consisting of patents or printed publications" in pre-AIA section 301 does not include AAPA, that is a non-sequitur in this case. As noted above, pre-AIA section 311 relates only to the content of *requests* for IPX—it does not restrict what happens in the IPX itself after it has been ordered. And, as noted above, the Board is authorized to enter new grounds of rejection in an IPX decision on appeal. *Qualcomm* is inapposite.

In sum, whether or not the phrase "prior art consisting of printed publications" excludes admitted prior art, the answer is not relevant here. The answer may bear on a situation (not present here) where AAPA is the basis of ground in a *request* for IPX. But it poses no barrier where, as here, the Patent Office has used AAPA only after reexamination has been ordered.

That AAPA can form the basis of a Board-issued ground of rejection in an IPX but not in an IPR reflects the differing purposes of these procedures. An IPR was designed to be a quick and narrow proceeding on the grounds—and only the grounds—raised in the petitioner's petition. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1356-58 (2018). On the other hand, IPXs are, as the name suggests, essentially a redo of examination. 35 U.S.C. § 314 (2011) (noting that IPXs "shall be conducted according to the procedures established for initial examination"). The Patent Office is free to raise grounds of unpatentability not present in the request for IPX. 37 C.F.R. § 41.77. Whereas in IPR "it's the petitioner, not the Director, who gets to define the contours of the proceeding," IPXs "follow[] a more or less inquisitorial course led by the Patent Office." *SAS*, 138 S. Ct. at 1353, 1355. Here, that inquisitorial course led the proceedings to—and authorizes the Board's use of—admitted prior art.

### 3. Even accepting SoftView's incorrect legal argument as true, the Board's use of AAPA was proper.

Even taking as true SoftView's mistaken understanding of the law, SoftView's challenge still fails. That is because AAPA was not "the

59

basis" of the Board's New Ground 1. New Ground 1 involved the combination of multiple references: AAPA (e.g., the Mozilla rendering engine), Pad++ (Bederson-1, Bederson-2, Bederson-3, Bederson-4, Bederson-5, and Pad++ Tour), JP 169, SVF, and VML. Appx101. In this combination, the Board used AAPA only in relation to the single limitation added by claims 29 and 78, that is, "wherein the HTML-based Web content includes cascading style sheet content defined layout and presentation attributes for the Web page." Appx10-14. New Ground 1 uses other prior art to teach the independent-claim limitations incorporated in claims 29 and 78. Section I.A.2; Appx2188-2190, Appx2500-2501 (explaining how the independent-claim limitations incorporated into claims 29 and 78 are taught by the Pad++ references).

In *Qualcomm*, this Court explained that AAPA could be used in a ground of unpatentability without AAPA becoming "the basis" of the ground. *Qualcomm*, 24 F.4th at 1376. Specifically, the Court noted that AAPA could be used to "supply[] a missing claim limitation." *Id.* Here, the Board used AAPA only to show that a single dependent-claim limitation was within the knowledge of those of skill in the art. In light

of the limited nature of the Board's use of admitted art, AAPA cannot be said to be "the basis" for New Ground 1.[11] *McCoy v. Heal Sys., LLC*, 850 F. App'x 785, 789 (Fed. Cir. 2021) ("The Board did not err by accepting the specification's own assertions of what is well known in the art."). Thus, even under SoftView's mistaken view of the law, the New Ground 1 rejection was proper.

## B. SoftView has not shown error in the Board's decision to adopt new grounds of rejection.

SoftView objects that the Board's decision to adopt New Grounds 1 and 2 (rejecting claims 29 and 78) was improper.  Br. 53-57.  But the very regulations on which SoftView relies authorize the Board to enter New Grounds 1 and 2.  SoftView's objection lacks merit.

### 1. The Procedural History At Issue

SoftView's objection appears to relate to how the substance of New Grounds 1 and 2 were raised in the proceedings at the Patent Office.  A summary of the relevant events is provided below:

---

[11] Indeed, the Patent Office has issued guidance permitting the use of AAPA in the circumstances here.  *See* https://www.uspto.gov/sites/default/files/documents/20220609updatedA APAmemo.pdf; *see also Apple Inc. v. Qualcomm Inc.*, No. IPR2018-01315, Paper 40 at 17-19 (PTAB Nov. 10, 2022).

On May 16, 2017, the examiner issued an office action rejecting claims 29 and 78 (among others) as obvious. Appx1031. The examiner's rejection of claims 29 and 78 was based on Ground #5, the combination of Pad++ and Bray, which had been raised in Apple's request for IPX. Appx1040, Appx1047-1048.

On July 17, 2017, SoftView filed its response to the office action, in which it disputed the rejection under Ground #5. Appx1139-1140.

On August 16, 2017, Apple responded with its comments to SoftView's response. In its comments, Apple proposed two new grounds of rejection: (1) the prior art of record in view of the HTML Standards; and (2) the prior art of record in view of Admitted Prior Art. Appx1202-1205.

On May 1, 2018, the examiner issued an Action Closing Prosecution ("ACP"). Appx1345. The ACP rejected claims 29 and 78 (among others) under Ground #5 (Pad++ in view of Bray). Appx1372-1374. The examiner did not adopt Apple's proposed new grounds of rejection in view of the HTML Standards (which the Examiner labeled Ground #11) or in view of AAPA (which the Examiner labeled Ground #12). Appx1379-1382. The examiner explained that he did not adopt

Grounds #11 and #12 because Apple had not provided a "the required detailed discussion of the pertinence" of the art and Apple had not identified "specific claims" to be rejected under the proposed new grounds. Appx1380.

The proceedings continued and the examiner ultimately withdrew his rejection of claims 29 and 78 under Ground #5. Appx1579-1580, Appx1682-1685. Apple appealed the examiner's decision to uphold claims 29 and 78. In its Appeal Brief, filed on July 21, 2021, Apple provided three distinct bases for holding claims 29 and 78 unpatentable: (1) Pad++ in view of Bray, Appx2184-2186; (2) the instituted prior art of record in view of the HTML standards, Appx2186-2188; and (3) the instituted prior art of record in view of admitted prior art, Appx2188-2190.

In its Decision on Appeal, the Board rejected claims 29 and 78 under New Ground 1 and New Ground 2.

### 2.    SoftView's procedural objection to the new grounds of rejection lacks merit.

SoftView contends that the Board was unauthorized to enter New Grounds 1 and 2. Specifically, SoftView asserts that Apple previously raised the grounds now adopted by the Board as New Grounds 1 and 2

in its August 16, 2017 comments. Br. 57. And, SoftView asserts, Apple

raised the rejection of these grounds in its appeal brief. Br. 56. Thus,

SoftView contends, the Board's entry of these rejections as "new

grounds" runs afoul of language in 37 C.F.R. § 41.77 that limits new

grounds to those "not raised in the appeal." Br. 56.

Rule 41.77(b), which relates to the Board's authority to enter new

grounds of rejection, recites in relevant part that:

> Should the Board reverse the examiner's determination not
> to make a rejection proposed by a requester, the Board shall
> set forth in the opinion in support of its decision a new
> ground of rejection; *or* should the Board have knowledge of
> any grounds not raised in the appeal for rejecting any
> pending claim, it may include in its opinion a statement to
> that effect with its reasons for so holding, which statement
> shall constitute a new ground of rejection of the claim.

37 C.F.R. § 41.77(b) (emphasis added).

As an initial matter, SoftView improperly conflates the rejections

in New Ground 1 and New Ground 2. Rule 41.77 provides for two

different types of new grounds of rejection. Under the first clause, the

Board may "reverse [an] examiner's determination not to make a

rejection proposed by a requester" (i.e., a "reversal"). *Id.* Under the

second clause, the Board may enter a new ground that was "not raised

in the appeal" (i.e., a "Board-initiated new ground"). *Id.* Here, New

Ground 1 is a reversal.[12]  New Ground 2 is a Board-initiated new

ground.[13]  SoftView's objections have no merit for either of the new

ground of rejection.

### a. SoftView has not shown any error with respect to the Board's New Ground 1.

*First,* even if SoftView were correct that Apple's August 16, 2017

comments were deficient, it is of no moment.  Rule 41.77 permits the

Board to reverse the examiner so long as the Board disagrees with the

examiner on the merits of the ground.  Because that is what the Board

did here, it did not err.

SoftView's interpretation of Rule 41.77 is nonsensical.  Under

SoftView's interpretation, the Patent Office is (1) prevented from using

a ground of rejection if that ground was improperly raised by a third-

party requester (because, to SoftView, it would be an improper

"reversal"); but (2) would have been permitted to use that same ground

if it had not been raised at all by the third-party requester (because it

---

[12] Appx14 ("[W]e reverse the Examiner's decision not to reject claims 29
and 78 … over Patent Owner's admitted prior art and Pad++ Tour and
we enter a new ground of rejection based thereon.").

[13] Appx25 ("We reject claims 29 and 78 … as unpatentable over Pad++
Tour and HTML 4.0 Standard.").

would be a Board-initiated new ground covered by the second clause of Rule 41.77).  That result is inconsistent with the "inquisitorial," Patent Office-led nature of IPX.  *SAS*, 138 S. Ct. at 1353.

*Second*, the Board was permitted to find Apple's comments of August 16, 2017 satisfactory.  In its request for IPX, Apple submitted detailed claim charts explaining how the Pad++ references rendered the independent claims obvious.  Appx5189-5221.  Apple's comments further explained how the AAPA taught the CSS limitations of claims 29 and 78.  Appx1204 (noting that the '926 patent "disclose[s] using the Mozilla (Gecko) rendering engine … to parse and process the HTML and CSS source code").  Thus, the Board did not err even under SoftView's (mistaken) understanding of Rule 41.77.

### b. SoftView has not shown any error with respect to the Board's New Ground 2.

Because New Ground 2 is a Board-initiated new ground, SoftView's objection misses the mark.  The second clause of Rule 41.77(b) authorizes the Board to *sua sponte* initiate new grounds of rejection.  The Board's New Ground 2 was authorized on this basis.  In its appeal brief, Apple sought reversal of the Examiner's decision not to adopt Apple's proposed ground of rejection "in view of the HTML

66

Standards" and the "instituted prior art of record." Appx2188 (citing Appx1202). However, the Board's New Ground 2 was based *not* on the instituted prior art of record in view of the HTML Standards, but instead based solely on Pad++ Tour and the HTML 4.0 Standards.[14] Appx51. SoftView's objection, which concerns the manner in which Apple raised its proposed ground of rejection, is thus a non sequitur. New Ground 2 was properly issued.

## C.    SoftView Has Not Demonstrated a Violation of the APA.

SoftView asserts that the Board violated the Administrative Procedure Act ("APA") because, to SoftView, the Board's decision here with respect to claim 29 is inconsistent with the Board's decision in an *ex parte* reexamination ("EPX") that found claim 29 not unpatentable. Br. 85-87.

---

[14] That New Ground 2 was not a reversal of the examiner's decision on Apple's proposed ground of rejection is confirmed by the difference between it and New Ground 1. Because Apple's proposed rejections were based on "the instituted prior art of record," Appx2186-2190, New Ground 1 includes Bederson-1, Bederson-2, Bederson-3, Bederson-4, Bederson-5, Pad++ Tour, JP 169, SVF, and VML. Appx50-51. On the other hand, New Ground 2 just includes Pad++ Tour and the HTML 4.0 Standards, confirming that it is ***not*** based on the instituted prior art of record. Appx51.

The Board considered—and rejected—SoftView's APA claim. As the Board explained in its opinion on SoftView's rehearing request, its decisions are not inconsistent because the grounds of rejection here include art (e.g., AAPA and the HTML 4.0 Specification) not considered in the earlier EPX. Appx48-49.

On appeal, SoftView narrows its argument. SoftView does not dispute that the grounds of rejection and the record here are different from those in the *ex parte* proceeding. Instead, SoftView argues that the Board here and in the prior *ex parte* proceeding came to inconsistent conclusions as to a key factual issue: "whether a PHOSITA would have any motivation to modify the Pad++ browser to support HTML 4 or have any reasonable expectation of success." Br. 85-87. SoftView's position lacks merit.

As an initial matter, the Board in the *ex parte* proceeding did not categorically rule (as SoftView contends) on "whether a PHOSITA would have any motivation to modify the Pad++ browser to support HTML 4 or have any reasonable expectation of success." Br. 86-87. On the contrary, the Board merely found that "one of ordinary skill in the art could not have combined the cascading style sheet (CSS) content of

68

Bray with the Pad++ zoomable browser, due to technological difficulties." Appx263.  Bray is not a prior art reference used in the rejections at issue here.  Thus, properly understood, the Board's finding in the *ex parte* proceeding has no bearing here.

Even taking as true SoftView's (incorrect) characterization of the Board's *ex parte* decision, the different grounds of rejection here amply justify a different outcome.  Whereas the Examiner in the EPX relied on Bray to teach the CSS limitations, New Grounds 1 and 2 use AAPA and the HTML 4.0 Specification, respectively.  This is a material difference.  Bray merely disclosed sending CSS files.  Appx24.  In contrast, New Ground 1 includes then-conventional browsers like Mozilla which had already implemented CSS; there would be no need to implement it from scratch.  Similarly, the HTML 4.0 Specification (New Ground 2) includes highly detailed disclosure of CSS not present in Bray.  That the starting points of the combinations here are different from the combination at issue in the EPX justifies the different outcome.

That the record here included expert testimony not in the EPX record also justifies a difference in outcome.  Here, Dr. Grimes testified at length as to how the teachings of Pad++ could be combined with

other art (e.g., conventional browsers) to implement the combinations at issue here.  Appx1214, Appx1309.  Dr. Grimes' testimony was not of record in the *ex parte* proceeding.  Appx5171 (refusing to consider the submitted Dr. Grimes declarations).

In sum, the Board's EPX findings of fact are not applicable here, the grounds of rejection are materially different here, and the record is materially different here.  Each of these differences, standing alone, justifies the finding of unpatentability here.  SoftView has not shown an APA violation.

## V.    Rule 42.73 Estoppel Provides This Court with an Alternative Ground Of Affirmance.[15]

"A patent applicant or owner is precluded from taking action inconsistent with [an] adverse judgment, including obtaining in any patent … [a] claim that is not patentably distinct from a finally refused or cancelled claim."  37 C.F.R. § 42.73(d)(3).  Because all claims at issue

---

[15] Although the Board's decision did not rely on Rule 42.73 estoppel, the issue was timely raised below.  Appx2500-2502, Appx2201-2203, Appx2508-2509.  Because Rule 42.73 estoppel as presented here is a purely legal issue, it may be used by this Court as an alternative ground of affirmance.  *In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009).

(claims 29, 64, 66, and 78) are not patentably distinct from already-

cancelled claims, SoftView is precluded from contesting the

patentability of these claims.  As such, Rule 42.73 provides this Court

with an alternative ground of affirmance on all claims at issue.

### A.    Claims 29 and 78 are not patentably distinct from already-cancelled claim 66 of the '353 patent.

Claim 66 of the '353 patent recites "wherein a portion of the

HTML-based Web content comprises cascaded style sheet data defining

aspects of the Web page design that are preserved at each zoom level

and panned view."  Appx5143 ('353 patent, 28:33-36).  Claim 66 of

the '353 patent was cancelled after the Board held it to be unpatentable

and this Court affirmed.  Appx194; Appx197.

Although claim 29 is not *identical* to claim 66 of the '353 patent,

the differences do not render claims 29 patentably distinct.  For

instance, claim 29 recites that the cascading style sheet content "defines

layout and presentation attributes."  But reasons explained above in

Section III.B, limiting "cascading style sheet content" to content that

defines layout and presentation attributes cannot be non-obvious when

defining presentation and layout is the entire purpose of CSS.

Nor is claim 78 patentably distinct from claim 66 of the '353 patent. Claim 78 merely recites "wherein a portion of the HTML-based Web content comprises cascading style sheet data." Because there is no limitation in claim 78 not present in claim 66, claim 78 cannot be non-obvious over claim 66.

Nor can any limitation of claims 1 or 52, upon which claims 29 and 78 depend, provide the missing patentable distinctness. Claims 1 and 52 are not patentably distinct from claim 36 of the '353 patent, on which claim 66 depends. What's more, claims 1 and 52 have themselves been held unpatentable as obvious in decisions affirmed by this Court, so cannot provide patentably distinct limitations. Appx265, Appx234.

## B.   Claims 64 and 66 are not patentably distinct from already-cancelled claims 12 and 14.

Claim 12 recites:

The mobile device of claim 1, wherein execution of the instructions performs further operations comprising enabling a user to view a column of the Web content at a higher resolution than a current resolution by tapping on the column via the touch-sensitive display, wherein in response thereto, the display is re-rendered such that content corresponding to the selected column is displayed to fit across the touch-sensitive display.

72

Appx144(23:32-40). Claim 14 recites a nearly identical limitation but pertains to paragraphs instead of columns. Appx144(23:49-56). Claims 12 and 14 were cancelled after the Board held them to be unpatentable, Appx265, and this Court affirmed, Appx267.

Claims 64 and 66 are not patentably distinct from claim 12 and 14, respectively. Claim 64 is word-for-word identical to claim 12 except that: (1) claim 12 recites the words "to fit"; and (2) claim 12 depends on claim 1, whereas claim 64 depends on claim 52. Claim 66 is word-for-word identical to claim 14 except that claim 12 depends on claim 1, whereas claim 66 depends on claim 52. None of these differences are material. The absence of the word "to fit" is the sort of "obvious variation" that cannot provide patentable distinctness to claim 64. *Cf. Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1278 (Fed. Cir. 1992). And the fact that claims 12 and 14 depend on claim 1, whereas claims 64 and 66 depend on claim 52, cannot provide patentable distinctness when claims 1 and 52 are patentably indistinct from each other and, what's more, have both already been held unpatentable as obvious in decisions affirmed by this Court. Appx265, Appx234.

73

# CONCLUSION

The Board's decisions should be affirmed.

Respectfully submitted,

Madeleine C. Laupheimer
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Sonal N. Mehta
WILMER CUTLER PICKERING HALE
    AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306

John C. Alemanni
KILPATRICK TOWNSEND &
    STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC  27609

David A. Reed
KILPATRICK TOWNSEND &
    STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800,
Atlanta, GA  30309

*Counsel for Appellee*
*Motorola Mobility LLC*

April 17, 2023

*/s/ Parth Sagdeo*
Parth Sagdeo
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
(617) 880-1800

Melanie L. Bostwick
Mark S. Davies
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005

Henry A. Petri, Jr.
POLSINELLI PC
1401 Eye Street, NW, Suite 800
Washington, DC  20005

James P. Murphy
POLSINELLI PC
1000 Louisiana Street, Suite 6400
Houston, TX  77002

*Counsel for Appellee*
*Apple Inc.*

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 13,986 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Parth Sagdeo*
Parth Sagdeo
*Counsel for Appellee Apple Inc.*